UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CIV. ACTION NO.: 15-23437 KMM

L.T. Case No.: 13-14289- RAM

In Re THE FT. LAUDERDALE BRIDGE CLUB, INC.

SAMUEL D. ROSEN,

Appellant,

v.

THE FT. LAUDERDALE BRIDE CLUB, INC.,

Appellee.

ON APPEAL FROM ORDER OF THE U.S. BANKRUPTCY COURT OF THE SOUTHERN
DISTRICT OF FLORIDA

**MOTION TO INTERVENE ON BEHALF OF GLORIA EZRIN**

**Douglas C. Broeker, Esq.**
Florida Bar No. 306738
**SWEETAPPLE, BROEKER & VARKAS, P. L.**
44 W. Flagler Street, Suite 1500
Miami, Florida 33130
Tel.: (305) 374-5623
Fax: (305) 358-1023
docservice@broekerlaw.com
doug@broekerlaw.com
*Counsel for Appellant*

## MOTION TO INTERVENE ON BEHALF OF GLORIA EZRIN

Gloria Ezrin ("Ezrin") and Appellant, SAMUEL D. ROSEN ("Rosen" or "Appellant"), through their undersigned counsel, hereby move for an Order permitting Ezrin to intervene herein either as a matter of right pursuant to Rule 24(a)(2), Fed. R. Civ. P., or by permission pursuant to Rule 24(b).  In support, Ezrin and Rosen respectfully show as follows:

## PROCEDURAL HISTORY

During the course of the twenty-two months Judge Isicoff presided over this bankruptcy (from October 2013 to her August 14, 2015 *sua sponte* Order of Recusal), she issued literally dozens of Orders.  As discussed herein, many were actually against the Bridge Club's best interests, including many which were in favor of Abrams, and the trustee.  Critically, Ezrin, a member of the Club for fifteen (15) years, was, like the other members, given notice of virtually none of the motions resulting in said Orders.  When Ezrin and other concerned members learned of them long *after* their issuance, long *after* Judge Isicoff approved the Second Amended Plan assessing over Seven Hundred Fifty Thousand Dollars ($750,000.00) in costs of administration against the Club, and *after* Judge Isicoff then recused herself, their time to intervene/appeal had long since passed.

On August 27, Rosen filed two (2) motions in the Bankruptcy Court – one to disqualify Abrams from participating in any further proceedings in the Bankruptcy Court [D.E. 1414] and one to vacate most of the Orders issues by Judge Isicoff pre-recusal [D.E. 1415].  Judge Mark promptly denied both motions [D.E. 1418] and this appeal followed.

Next, because Judge Mark had relied for his decision on, *inter alia*, the bankruptcy case being closed, in order to meet this concern, Rosen, on September 10, filed a motion to reopen the bankruptcy case so as to allow the aforesaid two (2) motions to proceed [D.E. 1428].  One day

later, on September 11, Judge Mark denied that motion and an appeal from that Order promptly followed and is now pending before this Court under docket number 15-cv-23549.[1]

Immediately following, Ezrin moved the Bankruptcy Court to intervene in that Court [D.E. 1398]. Here again, Judge Mark entered an Order denying Ezrin's motion without prejudice on the ground that she needed to make it in the District Court [D.E. 1404].

On August 27, Ezrin moved this Court to intervene in the first consolidated appeal before this Court under Docket Number 15-cv-22380 [D.E. 13]. Abrams opposed [D.E. 19] asserting *inter alia* that Ezrin's motion lacked factual support. On September 17, Ezrin filed her fact-intensive Reply [D.E. 22]. This Court then issued an Order on September 23 [D.E. 26] denying Ezrin's motion on the grounds that Ezrin "fails to offer any facts supporting (her motion)." On October 22, Rosen and Ezrin filed a notice of appeal to the 11th Circuit from this Court's September 23 Order and they are presently preparing a motion to the Circuit for immediate relief given the high probability of success they have in prevailing on their appeal and having this Court's September 23 Order overturned as a matter of law.

## THE INSTANT MOTION

Ezrin here seeks to intervene in so much of this appeal as respects Judge Mark's Order denying Rosen's motion to vacate pre-recusal Orders. As this appeal was only filed on September 11, as the Bridge Club has yet to even appear, and as no motions or any other proceedings have occurred herein, this motion is timely and will not, in any way, delay the process of this appeal. *See*, [D.E. 1427].

Second, Ezrin has an interest both in her own right and as a statutory representative of the Bridge Club to bring derivative actions in the name of and for the benefit of the Club against

---

[1] On October 22, Rosen filed a motion to consolidate his appeal in 23549 with his appeal in 23437.

Abrams and other guilty parries pursuant to Fla. Stat. Ch. 617.07401.  In this regard, Ezrin and her husband Marty had continuously been members of the Club for fifteen (15) years until December 31, 2014 when her last membership year expired.  More than that, she and Marty's involvement went well beyond mere membership and card playing.  Thus, Ezrin:

1. Took on the responsibility to do the periodic shopping for foodstuffs for the Club and for hauling them from the vendors to the Club;

2. Were involved in virtually every aspect of holiday/special lunch or dinners held by the Club from buying, preparing and serving the food, setting up tables, promoting the event, collecting attendance fees, cleaning up, etc.;

3. Indeed, the only reason the Club was allowed to prepare and sell food was that Ezrin has a Florida state license to manage a food enterprise.

4. Ezrin and her husband periodically served on the Board of Directors of the Club and on a variety of its Committees.

In short, there are few if any members who have worked so tirelessly for so long for the Club.

Ezrin's interest in seeking vacatur of Judge Isicoff's Orders in her own right arises from certain Orders issued by Judge Isicoff including:

1. On February 4, 2014, *Abrams*, the Club's supposed attorney, made a motion [D.E. *729*] for the Court to authorize the trustee to set up a committee to pass the plate among Club members and raise money which would go into the Club's general treasury and to thus not be for the Club's benefit but rather, be available to pay the trustee and his law firm in what appeared to be an imminent conversion to a Ch. 7.[2]

---

[2] As early as the end of 2013, Trustee Tabas had announced that he was already "upside down," that the Club was already administratively insolvent in that the costs of administration already far exceeded the Club's ability to pay.

2. Rosen had asked that the members to be solicited be clearly told that their donations were not likely to go to benefit the Club but rather, would only benefit the trustee and his entourage of lawyers, professionals, etc.[3] This was opposed and Judge Isicoff refused to include same in her Order granting Abrams' motion [D.E. 826], thus leaving the trustee free to solicit contributions from the members under false pretenses. And he did.

What followed was an extremely heavy-handed solicitation of members who were told that the money solicited would be for the Club's benefit and, complete with periodic announcements of contributions and public thanks to those who gave. Many members who were suspicious, did not contribute and those members were shunned, blackballed and embarrassed to the point that they stopped playing bridge at the Club.

Thus, while Ezrin has rights she could pursue in her own interest, including against Abrams and certain Club officials and members, in a lawsuit of her own, she would be met by a defense that the Bankruptcy Judge had approved this. Thus vacating that Order would remove this obstacle.

In addition, Ezrin has and is prepared to pursue derivative claims on behalf of the Club against Abrams and others for their misconduct,[4] against members of the trustee's entourage of professionals who have essentially taken money from the Club right under the Court's nose [see, e.g., D.E. 180], and who have grossly overcharged the Club for their often wasted, unnecessary

---

[3] In fact, the trustee's and Abrams' jointly sponsored Second Amended Plan disclosed about $1.5 Million in such costs approved and awarded by Judge Isicoff, of which the Bridge Club would have to pay roughly half.

[4] Abrams' misconduct has been fully put before this Court in Rosen's motions to disqualify Abrams in the Bankruptcy Court and in this Court in the 22380 appeal, Rosen's Reply papers there, and Rosen's September 30 Response to the Court's September 23 Order to Show Cause, all of which are incorporated herein in full, by reference.

services.  Here again, since every dime of those supposed costs of administration were presented to Judge Isicoff, and each was approved one hundred percent (100%), unless those Orders are vacated, it will be difficult for Ezrin or anyone else to bring such a derivative action.

Further, it is apparent that if this motion it not granted, Ezrin will have no right to pursue those matters separately.  First, Ezrin's time for herself, appealing the Bankruptcy Court's Orders refusing to vacate the pre-recusal Orders has long since passed.  Even if she could now file her own motion to vacate in the Bankruptcy Court (and her own appeal from the expected denial by Judge Mark), she lacks the financial wherewithal to take on those people alone and lacks the encyclopedic knowledge and wealth of evidence that Rosen has accumulated in some thirty-five (35) transfile boxes.  Thus, as a practical matter, Ezrin's only chance of pursuing her rights and those of her Club is to "piggyback" on Rosen's appeal here and rely on Rosen's knowledge and that of his counsel.

Ezrin's interest is not fully represented by Rosen here.  Rosen has his own perspective on the Judge Isicoff orders he seeks to vacate, starting with any Order directly prejudicing Rosen's rights.  Rosen's motion to vacate in the Bankruptcy Court directly urged a conference to explore how Rosen's objectives can be addressed without depriving the Bridge Club of the rehabilitation benefits of Ch. 11.  In short, Ezrin sees no Order of Judge Isicoff that she and Rosen would disagree in seeking vacatur but Rosen's priorities may be different and he has additional impediments to pursuing, e.g., the Order approving Abram's pass-the-plate motion, particularly in potential discussions with a settlement judge.

Rosen may be impaired and subject to defenses that Ezrin would not be.  For example, Abrams himself has already claimed to this Court in opposing Ezrin's motion to intervene in the 22380 case, that Rosen has no standing to, e.g., challenge Judge Isicoff's injunction Order [D.E.

1350] because Rosen is separately barred by the Rosen Settlement Agreement (when and until the Order approving it is vacated).[5] And Rosen may be subject to a "defense" that he had agreed or not objected or appealed from Judge Isicoff's earlier Orders and is now barred from seeking vacatur of them. In sum, while no one can predict how these "defenses" or any other defenses by the Club, the trustee, or others, will play out, it is clear that unless Ezrin is allowed to intervene here, her interests may well not be fully and independently represented, particularly if Rosen is held to lack standing.

Appellant and Ezrin believe that the foregoing presents an overwhelming case for granting intervention to Ezrin as a matter of law under subsection (a)(2) of Rule 24. However, if this Court disagrees, it is requested to grant Ezrin permissive intervention per Rule 24(b). Here, it is absolutely clear that Ezrin's appearance herein cannot in any way slow down, interfere with or impede the natural progression of this appeal.

**WHEREFORE**, Appellant, Samuel D. Rosen, and Gloria Ezrin, hereby move this Court for entry of an Order allowing Ezrin to intervene as a matter of right pursuant to Rule 24(a)(2), Fed. R. Civ. P. or, in the alternative, by permission pursuant to Rule 24(b), and for any and further relief which this Court considers just and equitable.

Dated: October 29, 2015.

Respectfully submitted,

By:   /s/ Douglas C. Broeker
**Douglas C. Broeker, Esq**.
Florida Bar No. 306738

---

[5] Unabashedly, Abrams has announced that his strategy is to challenge Rosen's standing to even appeal the outrageous injunction he obtained from Judge Isicoff [D.E. 1350] just before her recusal, thereby totally insulating that Order from appellate review if and only if he is first successful in stopping Ezrin from intervening, from her ability to pursue this appeal without Rosen.

CASE NO.: 15-23437 KMM

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed via electronic filing using the CM/ECF system with the Clerk of the Court which sent e-mail notification of such filing to all CM/ECF participants in this case and via Regular U.S. Mail to all parties who are not on the list to receive e-mail notification/service for this case, including the Ft. Lauderdale Bridge Club, on this 29th day of October, 2015.

*I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-I (A)*.

By:   /s/ Douglas C. Broeker
**Douglas C. Broeker, Esq.**
Florida Bar No. 306738
Doug@broekerlaw.com
DocService@broekerlaw.com
**SWEETAPPLE, BROEKER & VARKAS, P.L.**
44 W. Flagler Street, Suite 1500
Miami, Florida 33130
Tel.: (305) 374-5623
Fax: (305) 358-1023

DCB/mm
F:\wp51\Active.Client.Files\ROSEN, SAMUEL - APPEAL #1514\APPEAL CASE\Court Filed Docs - 15-23437 KMM\Pleadings\Motion to Intervene on behalf of Gloria Ezrin.docx