UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

---

CIV. ACTION NOs.: 15-cv-23437 KMM and 15-cv-23549 KMM

L.T. Case No.: 13-14289- RAM

---

In Re: FT. LAUDERDALE BRIDGE CLUB, INC.

---

SAMUEL D. ROSEN,

Appellant.

---

CONSOLIDATED APPEAL FROM ORDERS OF THE U.S. BANKRUPTCY COURT OF
THE SOUTHERN DISTRICT OF FLORIDA

---

**APPELLANT SAMUEL D. ROSEN'S CONSOLIDATED OPENING BRIEF ON APPEAL**

---

**Douglas C. Broeker, Esq.**
Florida Bar No. 306738
**SWEETAPPLE, BROEKER & VARKAS, P. L.**
44 W. Flagler Street, Suite 1500
Miami, Florida 33130
Tel.: (305) 374-5623
Fax: (305) 358-1023
docservice@broekerlaw.com
doug@broekerlaw.com
*Counsel for Appellant*

## TABLE OF CONTENTS

**Section**                                                                                        **Page**

STATEMENT OF JURISDICTION..................................................................................1

REQUEST FOR ORAL ARGUMENT ...........................................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...........................................2

A.   Respecting The 23437 Appeal ...........................................................................2

B.   Respecting The 23549 Appeal ...........................................................................2

STATEMENT OF THE CASE AND FACTS ...............................................................3

   A.   Facts – Chronology ......................................................................................3

   B.   The Proceedings Below ................................................................................5

SUMMARY OF THE ARGUMENT..............................................................................6

ARGUMENT ....................................................................................................................7

   Point I – The Governing Law Respecting Pre-Recusal Orders ...........................7

   Point II – Rosen's Rule 60(b) Motion [D.E. 1415]; Judge Mark's Order [D.E. 1418] Denying It Is, Clear Error of Law .................................................................9

   Point III – The Order [D.E. 1433] Denying Rosen's Motion to Reopen the Bankruptcy Case Is, At A Minimum, Clear Error ..............................................13

CONCLUSION ...............................................................................................................17

CERTIFICATE OF COMPLIANCE ...........................................................................17

CERTIFICATE OF SERVICE......................................................................................17

i

# **TABLE OF AUTHORITIES**

## Cases

*Bilzerian v. Bilzerian*, 100 F.3d 886 (11th Cir. 1996). ..................................................... 1

*Connecticut State Dental Ass'n v. Anthem Health Plans*, 591 F.3d 1337, 1343 (11th Cir. 2009) . 2

*In Re Global Energies* (Case No. 13-11666) ........................................... 10, 11, 13, 14

*In Re Horne*, 2015 U.S. App. Lexis 18742 (11th Cir. Oct. 28, 2015) ........................... 12

*In re Timmons*, 479 B.R. 597 (Bankr. N.D. Ala. 2012) ............................................. 8

*Liljeberg v. Health Service Acquisition,* 108 S.Ct.Rep. 2194 (1988) ................................ 6, 9, 11

*Parker v. Connors Steel Company*, 855 F.2d 1510 (11th Cir 1988) .............................. 4

*Potashnick v. Port. City Construction Company*, 609 F.2d 1101, 1111 (5th Cir. 1980) ............ 6, 9

*Potashnick,* 609 F.2d at 1101 .................................................................... 8

*Preston v. U.S.*, 923 F.2d 731 (1991) ............................................................ 6, 8

*Preston*, 923 F.2d at 735 ........................................................................ 6, 8

*Seraphin v. Morris Publ'g Group LLC* (In re Morris Publ'g Group LLC), 2010 Bankr. LEXIS
    488 (Bankr. S.D. Ga. Feb. 9, 2010) ........................................................ 17

*Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*, 38 F.3d 1404, 1408 (5th Cir. 1994) ................. 8

*United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) ..................................... 1

## Statutes

§ 455(a) .......................................................................................... 9, 12

11 U.S.C § 350(b) ....................................................................... 2, 3, 6, 14, 15, 16

28 U.S.C. § 455 ................................................................................... 6

Rule 6(a), Federal Rules of Appellate Procedure .................................................. 1

## Rules

Southern District of Florida Local Rule 60(b) ........................................ 2, 6, 7, 8, 9, 10, 11 13

Southern District of Florida Local Rule 60(b)(1) ................................................. 11

Southern District of Florida Local Rule 60(b)(1)(2) .............................................. 11

Southern District of Florida Local Rule 60(b)(1)(2)(3) ........................................... 11

Southern District of Florida Local Rule 60(b)(2) .............................................. 9, 11

Southern District of Florida Local Rule 60(b)(3) ................................................. 9

Southern District of Florida Local Rule 60(b)(6) ........................................... 7, 8, 10

Southern District of Florida Local Rule 87.4(f) ................................................... 1

Southern District of Florida Local Rule 8.7 ...................................................... 1

## STATEMENT OF JURISDICTION

In these two (2) appeals, consolidated by Order of this Court entered October 30, 2015, from two (2) separate Orders of the Bankruptcy Court [D.E. 1418, 1433],[1] this Court has jurisdiction pursuant to Rule 6(a), Federal Rules of Appellate Procedure, Southern District Rule 8.7, and 28 U.S.C. § 158 in that each is a final Order that denies and thereby fully disposes of: Appellant's Motion to Vacate Orders entered, pre-recusal, by Judge Isicoff [D.E. 1415]; and Appellant's motion to reopen the bankruptcy proceeding [D.E. 1428].[2]

## REQUEST FOR ORAL ARGUMENT

Appellant conditionally requests oral argument in this cause pursuant to Southern District of Florida Local Rule 87.4(f).

## STANDARD OF REVIEW

On appeal from a bankruptcy court's final orders, the appellate court reviews determinations of law *de novo* and factual findings under the clearly erroneous standard. *See Bilzerian v. Bilzerian*, 100 F.3d 886 (11th Cir. 1996).

A finding of fact is clearly erroneous when a reviewing court finds that "although there is evidence to support [the lower court's] finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).  A reviewing court may, however, "look carefully" to discover if the court below based its findings upon incorrect legal principles. If the trial court

---

[1] "[D.E.]" citations are to the entries on the official docket sheet of the Bankruptcy Court. "[Doc.]" citations are to the entries in the official docket sheets of the District Court on this appeal.

[2] Appeal Case No. 15-cv-23437 (the "23437 Appeal") is directed to the [D.E. 1418] Order. Appeal Case No. 15-23549 (the "23549 Appeal") is directed to the [D.E. 1433] Order.

bases its findings upon a mistaken impression of applicable legal principles, the reviewing court is not bound by the clearly erroneous standard.

Discretionary decisions of a lower court are reviewed for abuse of discretion. *Connecticut State Dental Ass'n v. Anthem Health Plans*, 591 F.3d 1337, 1343 (11th Cir. 2009)

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

**A. Respecting The 23437 Appeal**

1. Did the lower court err as a matter of law in denying Appellant's Rule 60(b)-based motion to vacate pre-recusal Orders?

2. Did the lower court err as a matter of law in predicating its decision on its own improper – and problematic – review of the record in the Bankruptcy Court upon which it concluded that there is no evidence of Judge Isicoff's bias?

3. Did the lower court err as a matter of law in further predicating its decision to deny Appellant's Rule 60(b)-based motion to vacate pre-recusal Orders on the grounds that, subject only to pending appeals,[3] the Bankruptcy case was closed and would remain closed?

**B. Respecting The 23549 Appeal**

4. Did the lower court err as a matter of law in denying Appellant's motion to reopen the supposedly closed bankruptcy case pursuant to 11 U.S.C. § 350(b) so as to accord Rule 60(b) relief to Rosen and the Debtor; and

5. As further cause, on the circuitous grounds that Rosen had entered into a settlement Agreement incorporated into a confirmed Plan, both of which were pre-recusal Orders sought to be vacated?

---

[3] See, Appellant's pending appeals from three (3) pre-recusal Orders of Judge Isicoff in Appeal Case No. 15-cv-22380-KMM (the "22380 Appeal").

6.    To the extent this Court reads the "may" in § 350(b) as permissive and discretionary, did the lower court err and abuse its discretion in denying Appellant's motion to reopen?[4]

## STATEMENT OF THE CASE AND FACTS

### A. Facts – Chronology

The facts respecting the relevant history of this bankruptcy case are more fully set forth in [D.E. 1415] and [D.E. 1428], and in [Doc. 33] and [Doc. 52] in the 22380 Appeal, all of which are before this Court and incorporated herein so as to spare this Court unnecessary redundancies. Suffice to say that the relevant chronology and most critical facts on this appeal are:

1.    The Chapter 11 Petition herein was filed February 26, 2013 and assigned to Judge Ray.

2.    After issuing numerous Orders, Judge Ray granted Rosen's motion for disqualification but only on the benign grounds – not asserted by Rosen – that he had a bias in favor of the "2,400 members" of the Bridge Club [D.E. 318].

3.    After a brief stop with Judge Olson (who voluntarily withdrew upon the parties' joint request), this case was transferred to Judge Isicoff in October, 2013 and she presided over it for twenty-two (22) months until her August 14, 2015 *sua sponte* recusal Order [D.E. 1394]. Pursuant to reassignment, Judge Mark now presides over the case.

4.    In March 2014, Judge Isicoff denied Rosen's motion to disqualify her (see, [D.E. 930, 933 and 939]) and in her Order [D.E. 948], accused Rosen of filing an affidavit which was false in several unidentified respects.

---

[4] This Court need not reach the issues in the 23549 appeal unless it first rejects Rosen's 23437 Appeal and affirms the Bankruptcy Court's Order [D.E. 1418.]

5.      Thereafter, Judge Isicoff continued to preside over this case, including in the May and June, 2015 proceedings which resulted in the Orders that are now before this Court in District Court Appeal No. 22380.[5]

6.      Then, without any intervening event, with nothing pending before her, Judge Isicoff issued, *sua sponte*, her August 14 Recusal Order and, uncharacteristically, offered not even a hint of a reason for her action, not even a benign one (like Judge Ray did), not an accusatory statement of denial of the facts (as Judge Isicoff did in her March 28, 2014 Order), not even the problematic grounds she offered in recusing herself in the *Sundale* case.[6]

7.      In short, while one might speculate as to the reasons for the Recusal Order, same is just that – speculation – and cannot change the fact that because no reason was offered, there is no way for a court to draw a time line to separate her Orders that are tainted from those that are not.[7]

8.      In sum, the undisclosed reasons for Judge Isicoff's Recusal Order taints the entire proceedings before her in the twenty-two (22) months of her tenure because there is no basis to identify a time line where the bias began and therefore, no basis to exclude from vacatur any of her Orders.

---

[5] Those Orders and the June 9 hearing followed Judge Isicoff's granting of Abrams' *ex parte* motion to reopen the bankruptcy case so as to assert claims against Rosen and his client, the Bridge Club, a motion made with no proper notice to Rosen and no effective notice to the Bridge Club, and by Order granting same, issued two (2) days after its filing.

[6] *See*, [D.E. 1415] at p. 9, fn. 9.

[7] Compare, *Parker v. Connors Steel Company*, 855 F.2d 1510 (11th Cir 1988).  There, the lower court's act that created the appearance of bias was clear, on the record, and directed to its law clerk's involvement in a Rule 56 motion.  In those unusual circumstances, the Circuit ruled that the error was "harmless" in that the offending Order on summary judgment was reviewable *de novo* on appeal.  And there was no need to even consider vacating earlier Orders since they were clearly not tainted, retroactively.

### B.  The Proceedings Below

Within days of receiving the Recusal Order by ordinary mail, Rosen filed his motion in the Bankruptcy Court to vacate all of Judge Isicoff's Orders with the following exceptions:

1.     The three (3) Orders of June 2015 already on appeal to this Court in the 22380 Appeal (because it appeared that the Bankruptcy Court lacked jurisdiction over them);

2.     All Orders reimbursing Bridge Club members for expenditures they made; and

3.     While Rosen's motion included vacatur of the Order enabling the Rosen Settlement and the Order approving the Second Amended Plan of Reorganization, Rosen made it clear that he did *not* want to deprive the Bridge Club of the benefits of the reorganization proceeding and therefore expressed the hope that by discussion, compromise and the perhaps the aid of a settlement judge, a resolution could be reached vacating only certain Orders (or parts of certain Orders), i.e., to not throw the good out with the bad.[8]  Rosen's efforts were ignored.

Instead, Judge Mark, following the same exact pattern as in *Sundale*,[9] denied the motion on the grounds:

1.     The Recusal Order itself "in no way implies bias;"

2.     He  has reviewed "the record" (comprised of over 1,000 docket entries during Judge Isicoff's 22 months presiding) and "find[s] no evidence of bias;"

---

[8] Such a result could be easily accomplished by, e.g., a post-recusal reiteration and acceptance of certain pre-recusal Orders or parts thereof.

[9] As the *Sundale* record and transcripts show (and what this Court can judicially notice), after Judge Isicoff recused herself, the *Sundale* case was reassigned to Judge Mark who promptly denied, *in toto*, the motion to vacate Judge Isicoff's pre-recusal Orders, criticized Scutieri for besmirching Judge Isicoff's good name, and, when Scutieri moved Judge Mark for a short stay of a pending sale of Debtor's assets, Judge Mark demanded, as a condition, that Scutieri disassemble his First Amendment-protected blog on which he talked of Judge Isicoff's misconduct.

3.      The bankruptcy case was closed and therefore, a post-judgment, post-closure Rule 60(b) motion to vacate did not lie.[10]

After the issuance of the [D.E. 1418] Order, Rosen attempted to meet Judge Mark's concerns that the bankruptcy case was closed, even to *post-judgment*, *post-closure*, Rule 60(b) motions.  Thus Rosen filed a motion patterned and styled exactly like Abrams' prior successful motion in which he sought, *ex parte*, reopening the bankruptcy case, so as to allow his Rule 60(b) motion to proceed [D.E. 1428].  That too was promptly denied by Judge Mark, the very next day [D.E, 1433].  There, purporting to exercise his discretion to not reopen under *11 U.S.C § 350(b)*, Judge Mark denied the motion on the grounds that, "After years of litigation, Mr. Rosen entered into a Settlement Agreement which was later incorporated into a confirmed Plan."[11]  Thus, by Judge Mark's lights, a motion to reopen in order to seek to vacate the Order enabling the Rosen Settlement and confirming the Plan pursuant to the post-judgment Rule 60(b) rights does not lie *because* of the existence of the Settlement Agreement and Plan.

## SUMMARY OF THE ARGUMENT

Respecting the 23437 Appeal, the controlling authorities of *Liljeberg*,[12] *Preston*[13] and *Potashnick*[14] are all in complete accord that upon the recusal of the lower court judge pursuant to

---

[10] These rulings, each plain error, are discussed, *infra*.

[11] The Rosen Settlement Agreement was entered into not years, but 14 months after the bankruptcy was filed and it expressly provided [D.E. 1089 at Section 10] that because Rosen will have no further involvement in the bankruptcy case, nothing to occur therein could prejudice his rights.  Rosen was not even served with the proposed Second Amended Plan, let alone given an opportunity to address its purported inclusion of his Agreement.

[12] *Liljeberg v. Health Service Acquisition,* 108 S.Ct.Rep. 2194 (1988).

[13] *Preston v. U.S.*, 923 F.2d 731 (1991).

[14] *Potashnick v. Port. City Construction Company*, 609 F.2d 1101, 1111 (5th Cir. 1980).

28 U.S.C. § 455, the courts must employ the three prong test to determine the extent of the pre-recusal Orders issued by the lower court.  Judge Mark rejected these principles, *sub silentio*, and instead, denied Rosen's Rule 60(b) motion on grounds that are irrelevant and clear error of law.

Respecting the 23549 Appeal, Judge Mark denied Rosen's motion to reopen the bankruptcy case for the purpose, *inter alia*, of asserting his Rule 60(b) motion, including vacating Judge Isicoff's Order approving and rendering effective the Rosen Settlement[15], on the wholly illogical and improper grounds that because Rosen had signed the Rosen Settlement (and the bankruptcy case was closed), it follows that Rosen had no right under Rule 60(b) to move to reopen to set aside…the Order enforcing the Settlement!  And whether one views the motion to reopen as a discretionary matter or not, Judge Mark's convoluted reasoning is clear error.

## ARGUMENT

**Point I – The Governing Law Respecting Pre-Recusal Orders**

Virtually all of the controlling authorities here of the Supreme Court, of the Fifth Circuit, both pre- and post-creation of the 11th Circuit, et al., arise in the context of a trial court's denial of a motion to disqualify and thus, the first step in the appellate court's analysis was to decide if that denial was correct or if the judge violated § 455.  If yes, to the latter, the court's analysis proceeds to step two, i.e., the three prong test to determine the vacatur of Orders issued by the trial court.

Here, there is no first step because this case arises from a voluntary, *sua sponte*, Recusal Order and thus, the analysis proceeds directly to step 2.  Said analysis is one clearly within Rule 60(b)(6) as *Liljeberg* and *Preston* have held.  The three prong analysis does not, however, accord

---

[15] By its very terms, the Rosen Settlement Agreement was not effective, was nothing, unless and until approved by the Court.  *See*, [D.E.1089 at Section 5].

equal weight to each prong.  Rather, as the *Preston* court said, citing to *Liljeberg*, that for the courts "to perform [their] high function in the best way, justice must satisfy the appearance of justice."  Thus, if under the third prong of the analysis – maintaining public confidence in the judicial process – if the reviewing court determines – as the 9th Circuit did in *Preston*- that despite many years of motions, orders, a trial, and entity or a final judgement, "there was no way, however, to purge the perception of partiality…other than to vacate the judgment and remand the case…for retrial by a different judge." *Preston*, 923 F.2d at 735.

The *Preston* court went on to hold that even if a complete "do over," including all pre-trial proceedings and a new trial, leads to the same result, the resulting inconvenience and expense to all involved was far outweighed by the benefits for future cases, and the judicial system as a whole, and the public's perception of it.  As *Preston* said, embracing the 5th Circuit's holding in *Potashnick*:

> "It prompts us to repeat the words of the Fifth Circuit that "[t]he unfairness and expense which results from disqualification ...can be avoided in the future only if each judge fully accepts the obligation to disqualify himself in any case in which his impartiality might reasonably be questioned."

*Potashnick*, 609 F.2d at 1101.  *See also*, *In re Timmons*[16] in which the court held that Rule 60(b)(6) required that the predecessor judge's rulings be vacated.

To be sure, a court considering the extent of vacatur required under the three prong test can certainly find – as the *Conners Steel* court found – that because it could pinpoint the exact time of the trial court's conduct violative of § 455 (i.e., issuance of an Order on a summary judgment motion) and that there was no claim of taint to any conduct or rulings before then, a wholesale vacatur of all Orders was not necessary.  But as the 5th Circuit held in *Travelers*,[17]

---

[16] *In re Timmons*, 479 B.R. 597 (Bankr. N.D. Ala. 2012).

[17] *Travelers Ins. Co. v. Liljeberg Enterprises, Inc*., 38 F.3d 1404, 1408 (5th Cir. 1994).

even though the trial court's conduct in violating § 455(b)(1) was of recent vintage, its conduct going back years before clearly violated § 455(a) and therefore, the vacatur Order was far more inclusive.

Here, the Court does not have that ability to determine what caused Judge Isicoff's Order of Recusal –  the Order being silent on the grounds for recusal - and therefore, no basis to identify or limit the period of time for which her Orders need to be vacated.  Rather, this Court is left with no choice but to conclude that whatever bias (or appearance of bias) caused Judge Isicoff to issue the Recusal Order, it taints every action she took or refused to take in her 22 month tenure presiding over this case.

**Point II – Rosen's Rule 60(b) Motion [D.E. 1415]; and Judge Mark's Order [D.E. 1418] Denying It, Is Clear Error of Law**

Rosen's motion to vacate [D.E. 1415] in the Bankruptcy Court was expressly based upon Rule 60(b)(1)(2)(3) and (6).  Rule 60(b)(1) because of the "surprise" that by her Recusal Order, Judge Isicoff has *admitted* bias or at least the appearance of same.  The Rule 60(b)(2) request was based upon the newly discovered evidence – Judge Isicoff's admission via her Recusal Order, and her activities through the Isicoff private family charity.  The Rule 60(b)(3) component was based upon the misconduct of Abrams as detailed in the other motions of record including the one for disqualification [D.E. 1414].

As to all of the Rule 60(b)(1)(2), (3) and (6) aspects of Rosen's motion, it is clear that they are all timely, filed days after the Recusal Order and within months of the final Order on the bankruptcy case.  *See*, e.g., *Liljeberg*  acknowledging the perceived harshness of "allowing a party to overturn a judgment rendered *months or years earlier* based on the appearance of partiality, even though the judge was in fact completely impartial."  796 F.2d at 801 (emphasis

added).  But such is the overriding importance of protecting and preserving the citizenry's perception of our judiciary's absolute appearance of impartiality.

The Rule 60(b)(6) component of Rosen's motion in the Bankruptcy Court is, of course, the very provision which is implicated in the above-cited precedents, teaching the three prong test for vacatur.  While not a recusal/disqualification case, the 11th Circuit's 2014 decision in *In Re Global Energies, LLC*[18] is most instructive.  There, the critical chronology was:

1.    The Ch. 7 Bankruptcy Petition was filed in July 2010.

2.    Wortley, an investor in *Global* then moved to dismiss it, but admitting that he had no direct evidence of the collusion and improper purposes he had alleged, as bankruptcy fraud, then *withdrew* his motion to dismiss.

3.    The bankruptcy then proceeded and Global's assets were sold in the Ch. 7 liquidation and the case closed.

4.    One year later, Wortley renewed his motion to dismiss.  The Bankruptcy Court denied it with prejudice.  Wortley appealed but did not timely perfect and his appeal was dismissed.

5.    Then, long after the closing of the bankruptcy case and the liquidation, and sale of the Debtor's assets, Wortley finally obtained the evidence that had been previously withheld from him and which proved up his claim of collusion in the filing of the bankruptcy. He then filed a Rule 60(b) motion in the Bankruptcy Court, to reopen the bankruptcy and void the sale. The Bankruptcy Court summarily denied it finding, *inter alia*, that it was untimely, coming years after the case closed and the assets sold, and the District Court, on appeal, affirmed.

---

[18] *See*, the 11th Circuit's Opinion *In Re Global Energies* (Case No. 13-11666) issued August 15, 2014.

6.      On further appeal, the Circuit Court first noted that if the Bankruptcy Court "has made a clear error of judgment or has applied the wrong legal standard we will conclude that it has abused its discretion in denying the Rule 60(b) motion" (citations omitted).[19]   The Circuit then vacated the years old Order closing the bankruptcy case and Ordered a set aside of the years old sale of the Debtor's assets.  Respecting the application of Rule 60(b)(2), the Court in *Global* held:

> "[P]arties who request relief under Rule 60(b)(2) are not barred from it simply because they rely on issues that had been litigated earlier. In fact, in the context of Rule 60(b)(2) motions, that is commonplace."

(citations omitted).[20]

Turning to the Order [D.E. 1418] denying Rosen's motion, one finds:

1.      Judge Mark ignored entirely every one of the portions of Rule 60(b) cited by Rosen in support, and that is surely clear error of law;

2.      Instead, Judge Mark first held that the Order of Recusal "in no way implies bias;"

3.      Judge Mark then denied the recusal-based portion of the motion on the grounds that in the two business days since it was filed on Thursday, August 27 and the date of the [D.E. 1418] Order on Tuesday, September 1, he had reviewed the record in this bankruptcy,[21] "finding no evidence of bias;" and

4.      Judge Mark held that Rosen's motion was improper because the bankruptcy case was closed!

---

[19] *Id*. at Slip. Op. p. 8.

[20] *See, Joseph Wortley v. Chrispus Venture Capital, LLC*, Court of Appeals Docket #: 13-11666, Opinion at p. 9.

[21]  There are over 1,000 docket entries covering just the 22 months Judge Isicoff presided over this case.

As to the first ground – that the Order of Recusal did not imply bias – Judge Mark's proposition, *dehors* any citation of authority, is astounding; except for § 455, neither Title 28 nor any other authority empowers a judge to "recuse" herself.  Indeed, it is black letter law that while a judge has the obligation to recuse herself when appropriate under § 455, she also has the complementary obligation to *not* recuse if there are no § 455 grounds present.[22]  And Judge Isicoff herself so held in *Sundale*.

Further, "recuse" is a word of art, and thus, while a judge may have reasons to "withdraw" from a case, that is not "recusal."  Indeed, Judge Isicoff was well familiar with this principle.  After all, this bankruptcy case was re-assigned to her because Judge Olson, who did not recuse himself, withdrew and reassigned it [D.E. 390].  Judge Olson did not use the word "recuse" with its implications of bias to describe his withdrawal and neither would Judge Isicoff unless she meant "recuse" in the § 455 context.

Nor can it be said that Judge Isicoff's recusal here was on grounds other than bias or, at least, her admission of an appearance of bias.  The only possible grounds for her recusal are § 455(b)(1) and § 455(a); no other provision of § 455 could possibly be implicated (e.g., Judge Isicoff does not own any stock in the Debtor which is a non-public, non-profit entity).

Respecting Judge Mark's scouring of the 1000 entry record covering Judge Isicoff's reign, and his failure to find "evidence of bias," the assertion strains credulity to the point that if it arose in a § 455(a) context, there would be no doubt that § 455(a)'s average, prudent, objective observer would not believe it for an instant.  Unfortunately, Judge Mark does not here acquit

---

[22] *See, In Re Horne*, 2015 U.S. App. Lexis 18742 (11th Cir. Oct. 28, 2015) in which the Circuit, reiterating its holding in an earlier case, held (at Slip. Op. 7): [A] judge, having been assigned to a case should not *recuse* himself on unsupported, irrational or highly tenuous speculation" (emphasis added).

himself well. To even claim to have undertaken this massive record review, to opine at all on whether it shows or does not show bias, is inappropriate.  No authorities empowered Judge Mark to go behind, to impeach, Judge Isicoff's Recusal Order.  None gave him the right to inquire, or become an apologist/protector.   Judge Mark cited no authority for his conduct in his Order because there is none.[23]

As for Judge Mark's final grounds for his [D.E. 1418] Order – that *because* the case is closed, he cannot rule on a Rule 60(b) motion to reopen it – to merely state the proposition is to debunk it.  Here, there is little doubt what the 11th Circuit would say.  In *Global Energies*, the Circuit not only Ordered a years old case reopened, but a *final* sale of assets in liquidation in the Bankruptcy Court and involving a third party, **REVERSED**.  In this case, therefore, the subject Orders should be vacated.

**Point III – The Order [D.E. 1433] Denying Rosen's Motion to Reopen the Bankruptcy Case Is, At A Minimum, Clear Error**

Judge Mark's Order [D.E. 1433], before this Court on the 23549 Appeal, is likewise erroneous.

Preliminarily, Rosen made his motion to reopen [D.E. 1428] in response to Judge Mark's holding in the [D.E. 1418] Order denying Rosen's Rule 60(b) motion, that the bankruptcy case was closed.  Also, as stated herein, *supra*, this Court does not reach the merits here unless it rejects Rosen's appeal of the [D.E. 1418] Order.

---

[23] We note that this Court has now – in its November 19 Order in the 22380 Appeal [Doc. 63] – denied Appellant's motion to vacate the three Orders of Judge Isicoff there on appeal on grounds of lack of appellate jurisdiction but adding, *in dicta*, that he sees no evidence of bias either and that the argument that the Order of Recusal admits bias (or appearance of) is "circular."  We do not mean to offend the Court here by reiterating these arguments and while the 22380 *dicta* may become the holding here, we are necessarily obliged to argue our position here for purposes of preserving further appellate review.

Here, in the [D.E. 1433] Order, Judge Mark held that *because* Abrams' prior motion to reopen [D.E. 1344] – granted by Judge Isicoff – was limited to the motions he sought to bring against Rosen and his former client, the Debtor, it follows, *a priori*, that this bankruptcy case cannot be reopened "for any other purpose," despite the game changing event of the August 14 Recusal Order, and is therefore "denied."

The [D.E. 1343] Order then continues with the holding that reopening under 11 U.S. C § 350(b) is a matter of discretion. But Judge Mark does not offer his grounds or his logic in exercising that discretion to deny *except* to note that: "After years of litigation, Mr. Rosen entered into a Settlement Agreement which was then incorporated into a confirmed Plan."

First, the litigation in the Bankruptcy Court was not "years." As of the date of the Rosen Settlement Agreement, the Bankruptcy Petition had been pending 14 months with a great deal of that time consumed by Rosen's motion to remove trustee Welt for perjury (successful) and his motion to disqualify Judge Ray for misconduct (successful).

Second, as noted above, the Rosen Settlement (at ¶5) provided that he was to have no further involvement in the bankruptcy proceeding – not even filing any papers – and was, in fact, removed from the service list. And the Rosen Settlement also provided (at ¶10) that nothing which occurred after the settlement could or would prejudice Rosen's rights. Thus, the incorporation of the Rosen Settlement Agreement and its terms into the Second Amended Plan, all without Rosen's knowledge or consent and perhaps even in breach of the Rosen Settlement, does not avail Judge Mark's analysis of Rosen's rights under the Settlement.

Further, as already shown – *supra*, Point I, the 11th Circuit will, based upon its *Global* decision, surely disagree with Judge Mark's refusal to reopen. Also, in *Preston,* and in *Global*, the period of litigation and the Orders vacated exceeded, by orders of magnitude, that involved in

this case.  And apart from the circularity that because Rosen entered into a *Settlement*, he is barred from reopening the bankruptcy case to set aside that *Settlement*, the [D.E. 1433] Order is just clear error.  The Court that reopened after Wortley had agreed to *withdraw* his first motion, after his second attempt was denied, will surely not be dissuaded by a settlement that never would have occurred had Judge Isicoff recused herself earlier and which today bears the taint of her recent Recusal Order.  Finally, far more offensive is Judge Mark's denial of Rosen's motion to reopen in the context of the earlier proceedings before Judge Isicoff.  Here, Appellant asks this Court to step back and appreciate the larger picture, including:

1. While 11 U.S.C. § 350(b) does have a catchall of grounds for reopening, it is clear that its principal purpose – explicitly stated – is to reopen if doing so provides *a benefit* to the Debtor.

2. Abrams, in his ex parte motion, sought to reopen to obtain relief *against* the Debtor, relief to protect him from having to answer in damages *to the Debtor* for his malpractice - and Judge Isicoff allowed it.

3. Abrams then sued his client for that injunction and, at the June 9 hearing, told the Court that he had advised his client, the Debtor, that he could not represent it at this hearing, i.e., Abrams was astute enough to appreciate that he could not appear for himself *for* the motion ad appear for the Debtor *against* it!  And yet Abrams, by his own admission on June 9, did/said nothing else.  He did *not* explain to his client that he was seeking to deprive it of an asset – a claim in malpractice – that could now, exceed $1 Million.  There is no evidence that he told his client the one last piece of advice he was ethically required to give – to urge them to get a new lawyer.

4.      Abrams then argued Section 9.6, 9.8 and 9.9 of the Second Amended Plan as the basis for an entitlement by him to the injunction Order he drafted, while omitting to disclose that Section 9.7 thoroughly destroys his case and Judge Isicoff slavishly signed the Order he submitted.   And as the transcript of the June 9 hearing shows [D.E. 1374], Abrams was supported in his presentation by trustee Tabas, the very person who, with Abrams, was the co-author, co-sponsor, co-proponent of that Plan.   Three people in the courtroom at that time: Abrams arguing and concealing Section 9.7, Tabas speaking and not mentioning Section 9.7, and Judge Isicoff, who held an extensive hearing on the Plan only 4 months earlier, who carefully read, reviewed and commented on, questioned and ultimately approved the entire Plan, including Section 9.7.  This is the complete picture, including Abrams' conduct which he cannot explain.[24]

5.      And finally, comes Judge Mark who denies Rosen's § 350(b) motion to reopen *for the benefit of, inter alia, the Debtor*, to vacate Orders so that the Debtor who got ripped off to the tune  of $1.5 million already in wasteful costs of administration and its members, like Ezrin, who got ripped off by being conned into making contributions totaling well over $100,000.00 not to benefit their Bridge Club, but to enrich Tabas and his firm, on the grounds that the case is closed!  The only person who benefitted by Judge Isicoff's approval of Abrams' reopening of the bankruptcy case *was Abrams* and the only person who benefitted from Judge Mark's denial of Rosen's motion to reopen  *was Abrams*!  Does bankruptcy exist for the benefit of attorneys, including those seeking to avoid responding to malpractice claims?  Judge Cristol said "no."

---

[24] Abrams has had many opportunities to respond when Rosen has raised the omitted Section 9.7 issue in the Bankruptcy Court and in this Court.  He has never denied a single word of it and, in fact, the only "defense" he has ever offered appears at p. 10, fn. 7 of his filing with this Court [Doc. 35] in the 22380 Appeal.  Abrams asserts Rosen is to blame – he should have moved for reargument of the [D.E. 1350] Order when he discovered Abrams' fraud.

See, *Seraphin v. Morris Publ'g Group LLC* (In re Morris Publ'g Group LLC), 2010 Bankr. LEXIS 488 (Bankr. S.D. Ga. Feb. 9, 2010).

<u>CONCLUSION</u>

The [D.E. 1418] Order ought be vacated on this appeal and Judge Isicoff's pre-recusal Orders vacated.  If this Court reaches it, the [D.E. 1433] Order ought also be vacated on this appeal.

Dated: November 23, 2015.

Respectfully submitted,

By:      /s/ Douglas C. Broeker
         Douglas C. Broeker, Esq.
         Florida Bar No. 306738

<u>CERTIFICATE OF COMPLIANCE</u>

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

By:      /s/ Douglas C. Broeker
         Douglas C. Broeker, Esq.
         Florida Bar No. 306738

<u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed via electronic filing using the CM/ECF system with the Clerk of the Court which sent e-mail notification of such filing to all CM/ECF participants in this case and via Regular U.S. Mail to all parties who are not on the list to receive e-mail notification/service for this case, including the Ft. Lauderdale Bridge Club, on this 23rd day of November, 2015.

By:      /s/ Douglas C. Broeker
**Douglas C. Broeker, Esq.**
Florida Bar No. 306738
Doug@broekerlaw.com
DocService@broekerlaw.com
**SWEETAPPLE, BROEKER & VARKAS, P.L.**
44 W. Flagler Street, Suite 1500
Miami, Florida 33130
Tel.: (305) 374-5623
Fax: (305) 358-1023

DCB/mm
\\broekerfs1\companyshare\wp51\Active.Client.Files\ROSEN, SAMUEL - APPEAL #1514\APPEAL CASE\Court
Filed Docs - 15-23437 KMM\Pleadings\Brief of Appellant.docx